<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MEHRDAD TABRIZI,<br><br>　　Plaintiff,<br><br>　　v.<br><br>NITTO, INC., et al.,<br><br>　　Defendants. | Civil Action No. 22cv1341 (EP) (JBC)<br><br>**OPINION** |

**PADIN**, District Judge.

Plaintiff Mehrdad Tabrizi alleges employment discrimination against Defendants Nitto, Inc., Nitto Denko Corporation ("Nitto Denko"), and Nitto Denko President Hideo Takasaki (collectively, "Nitto"). In an earlier state court action, former Nitto employee Lisa Panzner similarly alleged employment discrimination against Nitto and its CEO, Yukihiro Iizuka (the "Panzner Action").[1] The same firm represents both Plaintiff and Panzner: Berkowitz, Lichstein, Keritsky, Giasullo & Gross, LLC (the "Firm"). The state court judge in the Panzner Action denied Nitto's motion to disqualify the Firm based on an alleged conflict of interest between Plaintiff and Panzner: that Plaintiff, as Nitto's executive, had inside knowledge of Panzner's firing (and Nitto's potential defenses).

Nitto now moves for the same relief here. D.E. 8. Plaintiff opposes. For the reasons below, the motion will be denied.

---

[1] N.J. Superior Court, Bergen County Dkt. No. BER-L-000305-21. The matter settled earlier this month. *Id.* at N.J. E-Courts, Trans ID: LCV20223577624 (Oct. 7, 2022).

I.  **BACKGROUND**

A. **The Panzner Action**[2]

Panzner, a white female, worked for Nitto, a Japanese company, from October 2016 through her termination on June 30, 2020. According to Nitto, Panzner's termination was the result of a reduction in force ("Reduction"). Mot. 4. Panzner, however, alleged racial and gender discrimination, specifically that Nitto favors Japanese and/or Japanese American and male employees. *Id.* On January 21, 2021, Panzner sued in New Jersey Superior Court. *Id.*

In its defense, Nitto alleges that Plaintiff had a role in approving the planned Reduction, recommending Panzner's replacement, voting to give Panzner a promotion to Vice President, and participating in decisions regarding Panzner's compensation. *Id.* at 4-5. Nitto also alleges that as early as August 10, 2020, when the Firm first sent Nitto Panzner's allegations, Plaintiff participated in privileged attorney-client communications related to "fact-gathering, defense strategies, negotiation tactics, and resolution planning." *Id.* at 5. For that reason, Nitto identified Plaintiff in its Panzner Action discovery responses as a "person with relevant knowledge who participated in the deliberative process pertaining to the [Reduction], which ultimately included the elimination of [Panzner's] position." *Id.*, citing D.E. 8-2 at 20 (Response to Interrogatory No. 18 (listing 11 people including Plaintiff and Panzner)).

B. **This action**

Plaintiff, a non-Japanese male, worked for Nitto or Nitto affiliates for about seventeen years until June 18, 2021. Mot. 6. According to Nitto, Plaintiff was a member of Nitto's litigation control group, meaning that he would have been involved in decision-making regarding Panzner's case (in the works as of August 10, 2020). *Id.* The Firm, like it had done almost a year earlier for

---

[2] Nitto was represented by a different firm in the Panzner Action.

Panzner, sent a demand letter on July 20, 2021 to Nitto also alleging, among other things, employment discrimination on the basis of age, race, ethnicity, and national origin. *Id.*; D.E. 8-2 at 26.

### C. Nitto moves to disqualify the Firm in the Panzner Action

On October 15, 2021, Nitto alleged an unwaivable conflict in the Firm's representation of both Plaintiff and Panzner and demanded that Plaintiff engage new counsel. D.E. 8-2 at 38. Nitto alleged, as paraphrased below, numerous reasons why it believed that the Firm should be disqualified pursuant to New Jersey Rule of Professional Conduct 1.7:

1. that Plaintiff's involvement in the litigation control group made him adverse to Panzner;
2. that Plaintiff had a role in the Panzner Action defense strategy;
3. that Plaintiff participated in multiple attorney-client privileged communications pertaining to the Panzner Action strategy;
4. that Plaintiff would be an essential fact witness "whose motivations will necessarily be challenged by Panzner"; and
5. that the Firm would necessarily need to cross-examine Plaintiff in the Panzner Action to undermine his credibility as a fact witness, risking the Firm's duty of loyalty to Plaintiff.

D.E. 8-2 at 37-39.

Nitto thereafter refused to substantively communicate directly with the Firm about this matter. Nitto moved to disqualify the Firm in the Panzner Action and bar the Firm from recovering any fee for representing Plaintiff. On March 1, 2022, the Panzner Action's judge, the Honorable Gregg A. Padovano, J.S.C., denied the motion. D.E. 8-2 at 50 (the "First Denial").

Undaunted by the First Denial, Nitto tries again here. Nitto asserts: (1) that the Firm's concurrent representation of Plaintiff and Panzner creates a conflict of interest under RPC 1.7 requiring disqualification (Mot. 9); (2) that the balancing of interests favors disqualification (*Id.* at 12); (3) that the Firm's conflict is incurable (*Id.* at 16); and (4) that the First Denial is

distinguishable.³  Plaintiff responds that the motion is precluded by the First Denial, that there is no conflict, and that Panzner and Plaintiff have waived any conflict that might exist.

## II. LEGAL STANDARD

Motions to disqualify are typically disfavored because disqualification can be a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Carlyle Towers Condominium Ass'n v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996) (cleaned up).  In considering a motion to disqualify, the Court should weigh relative hardships, a party's ability to select counsel of its choice, and the applicable ethics rules and professional standards. *See id.*; *see also Steel v. General Motors Corp.*, 912 F. Supp. 724, 733 (D.N.J. 1995) ("Resolution of a motion to disqualify requires the court to balance the need to maintain the highest standards of the legal profession against a client's right to freely choose his counsel." (cleaned up)). *Accord Twenty-First Century Rail Corp. v. New Jersey Transit Corp.*, 210 N.J. 264, 273 (2012).

"Although doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified." *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993) (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).  If a motion to disqualify is based on an alleged former representation, then the party seeking disqualification bears "the initial burden of production" to show "that the lawyer(s) for whom disqualification is sought formerly represented their present adverse party and that the present litigation is materially adverse to the former client[.]" *City of Atlantic City v. Trupos*, 201 N.J. 447, 462 (2010).  Once that burden is met, then the attorney whose disqualification is sought must "demonstrate that the matter or matters in which he ... represented the former client are not the same or substantially

---

³ The First Denial is not mentioned in Nitto's brief until the final three pages.  Mot. 20.

4

related to the controversy in which the disqualification motion is brought." *Id.* at 462-63. The burden of persuasion, at all times, lies with the movant. *Id.* at 463.

### III.  ANALYSIS

#### A.  Nitto's motion is precluded by collateral estoppel

28 U.S.C. § 1738, the Full Faith and Credit Act, "requires that state court decisions be given the same preclusive effect in federal court they would be given in the courts of the rendering state." *Delaware River Port Auth. v. Fraternal Ord. of Police*, 290 F.3d 567, 573 (3d Cir. 2002). Federal courts look "to the law of the adjudicating state to determine its preclusive effect." *Id.* (citing *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999)). "In New Jersey, when a judgment of a court of competent jurisdiction determines a question in issue, the judgment estops the parties and privies from relitigating the same issue in a subsequent proceeding." *Del. River Port Auth.*, 290 F.3d at 573 (citing *City of Plainfield v. Pub. Serv. Elec. & Gas Co.*, 82 N.J. 245 (1980)).

New Jersey courts apply a five-pronged test to determine whether collateral estoppel should bar relitigation of an issue: (1) the issue must be identical; (2) the issue must have actually been litigated in a prior proceeding; (3) the prior court must have issued a final judgment on the merits; (4) the determination of the issue must have been essential to the prior judgment; and (5) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the earlier proceeding. *Del. River Port Auth.*, 290 F.3d at 573 (citing *In re Estate of Dawson*, 136 N.J. 1 (1994)).

##### 1.  *The issues are identical (factor one)*

Nitto argues that the issues here and in the Panzner Action are distinguishable because "the question presented in the Panzner Action was whether [the Firm] was disqualified from

5

representing Panzner," while the "question presented in this action is whether the firm is disqualified from representing Plaintiff." Reply 4. But this mischaracterizes the issue. The issue is (and was) not which client the Firm can or cannot represent, but whether Plaintiff's knowledge of the circumstances surrounding Panzner's termination creates a conflict of interest. And Judge Padovano found, quite emphatically, that Nitto could not demonstrate that Plaintiff ever knew anything about Panzner's termination:

> …[t]he facts presented do not reveal evidence that [Plaintiff] is, or could be construed to be, legally or factually directly responsible for the violations alleged under [Panzner's] complaint. There is also nothing before the court which indicates that [Plaintiff] was a party to any relevant privileged correspondence concerning [Panzner's] termination or subsequent claims. …[Plaintiff] had no personal knowledge or substantive, direct or relevant involvement in [Panzner's] individual termination. There is nothing in the record which indicates that [Plaintiff] is actually a material witness. Any claim to the contrary by [Nitto] is unsubstantiated.

Prior Denial 10.

Nitto also believes this matter to be distinguishable because the Panzner Action had "been litigated for a lengthy period of time and the time for completing fact discovery had almost expired," while this action is still in its infancy. Reply 4. Though that may be true, that has no bearing on the similarities between the issue that Judge Padovano decided and the ones here.

Finally, Nitto argues that Judge Padovano did not consider that the Firm "has already been directly *adverse* to Plaintiff in the Panzner Action during Plaintiff's time as a litigation control group member for [Nitto]." Reply 4 (emphasis in original). This might come as news to Judge Padovano, who wrote that "[Plaintiff] had no personal knowledge or substantive, direct or relevant involvement in [Panzner's] individual termination. There is nothing in the record which indicates that [Plaintiff] is actually a material witness." Prior Denial 10. In other words, contrary to Nitto's arguments, the issues in the Panzner Action motion to disqualify and this motion are identical, weighing in favor of applying collateral estoppel. And although the state plaintiffs do not request

disqualification of counsel (as they did previously), their request to enjoin payments to counsel asks for effectively the same thing.  *Montesa v. Schwartz*, No. 12-CV-6057, 2015 WL 13173165, at *4 (S.D.N.Y. Sept. 22, 2015) (staying federal matter requesting to enjoin payments to counsel, finding it "effectively the same thing" as the plaintiffs' request in state court to disqualify that counsel).

> 2. *The issue was actually litigated in the Panzner Action, Judge Padovano issued a final judgment on the merits, and the issue was essential to Judge Padovano's determination (factors two through four)*

Nitto consolidates factors 2, 3, and 4 into one unsupported argument: "though the disqualification issue in the Panzner Action was litigated and resulted in Judge Padovano issuing an order, such order is interlocutory in nature and is not considered a "final judgment on the merits[.]"  Reply 5.  But Nitto conflates a final judgment on the merits of the *issue* with a final judgment on the entire *case*—that is, a final, appealable order.

"A 'final judgment' for purposes of collateral estoppel can be any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded conclusive effect." *Luben Industries, Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983) (citing *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979)).  "Preclusion should be refused if the decision was avowedly tentative.  On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for purpose of preclusion." *Id.* (citing Restatement (Second) of Judgments § 13 (1982) comment g). Where the parties have undertaken extensive briefing and a court has issued a detailed opinion, even interlocutory orders are "sufficiently firm" to be accorded preclusive effect for collateral

7

estoppel purposes.  *Abdallah v. Int'l Lease Fin. Corp.*, No. CV 14-06769, 2015 WL 13917968, at *12 (C.D. Cal. Aug. 5, 2015) (collecting cases).

Here, as Plaintiff argues, Judge Padovano's reasoned decision spanned 11 pages and addressed the parties' identical arguments comprising 71 pages of briefing, three witness certifications, three counsel certifications, documentary exhibits, and oral argument.  Pl. Opp. 10-11.  Given its comprehensive nature, the decision can only be described as "sufficiently firm" to be accorded preclusive effect.

Moreover, had Nitto truly believed that the Firm's conflict was unwaivable, it is difficult to understand why Nitto—through its other counsel—did not immediately seek leave to apply for an interlocutory appeal before the New Jersey Superior Court, Appellate Division.  *See* N.J.R. 2:5-6(a); *Janicky v. Point Bay Fuel, Inc.*, 396 N.J. Super. 545, 550.  But Nitto—again, through other counsel—has continued to litigate the matter in state court, requesting the extension of the discovery end date.  *See* N.J. Super. Ct. Dkt No. BER-L-305-21 at Trans ID: LCV2022972311 (Mar. 9, 2022).  Indeed, as of October 7, 2022, the Panzner Action settled.  *Id.* at Trans ID: LCV20223577624 (Oct. 7, 2022).  Accordingly, factors two through four also counsel in favor of applying collateral estoppel to bar Nitto's arguments.

### 3. The parties were in privity in the Panzner Action (factor 5)

Finally, Nitto argues that "Defendant Nitto, Inc. is the only party common to both this action and the Panzner action."  Reply 5.  But again, this misunderstands the issue.  Applying the fifth factor of the collateral estoppel analysis requires that "the party against whom collateral estoppel is asserted *must have been a party* or in privity with a party to the earlier proceeding."  *Del. River Port Auth.*, 290 F.3d at 573 (emphases added).  In this context, that would require only that Nitto's interests were represented in the litigation of the first motion to disqualify.  *Wunschel*

*v. City of Jersey City*, 96 N.J. 651, 658 (1984) (declining to invoke collateral estoppel against a party where that party's interests were not represented at an earlier hearing). There is no allegation, let alone any objective indication, that they were not—indeed, as the Prior Denial makes clear, counsel here makes essentially the same arguments made in state court. Accordingly, all five factors weigh in favor of precluding this motion.

> **B. Even if not precluded, Nitto's arguments would fail because there is no adverse interest, Nitto's arguments are unsupported, and the equities weigh against disqualification**

Nitto argues that there is a concurrent conflict of interest which requires disqualification pursuant to RPC 1.7. Mot. 8. The thrust of Nitto's argument is that the Firm cannot represent Plaintiff and Panzner simultaneously because Plaintiff will be called as an adverse witness in Panzner's case. *Id.* According to Nitto, from the Firm's time representing Panzner, the Firm "knew from discovery responses" that Plaintiff had "played a participatory role in the decision to implement the Reduction. *Id.* at 10. The Firm also allegedly knew that Plaintiff, as a member of Nitto's litigation control group, might be a material witness. *Id.* at 11.

As an initial matter, once the Panzner action settled, there is no longer a related case in which Plaintiff could theoretically be called to testify. In other words, it appears that Nitto's entire argument has been mooted. But for the sake of completeness, the Court finds the remainder of Nitto's argument unpersuasive for the reasons below.

RPC 1.7 is implicated only if a witness-client is "directly adverse" to a litigant-client. ABA Formal Opinion 92-367 (a waivable conflict arises where "a lawyer who in the course of representing a client examines another client as an adverse witness..."). Whether a client-witness is sufficiently adverse to raise a conflict under R.P.C. 1.7 is determined case-by-case basis. *See In*

*re Cendant Corp. Sec. Litig.*, 124 F. Supp. 2d 235, 241 (D.N.J. 2000) ("whether a witness is 'directly adverse' to a party must be determined on a case-by-case basis.").

Notably, Nitto's arguments remain as speculative now as they were before Judge Padovano.  For example, Nitto argues that "Plaintiff was a part of the litigation control group in the Panzner Action," and therefore "participated in decision[s] which were directly adverse to Panzner and her counsel."  Mot. 18.  Nitto does not specify Plaintiff's role in that group, the information he might have gained from it, or the decisions in which he allegedly participated.

Conversely, Plaintiff points to the undisputed fact that out of thousands of pages of discovery, Nitto could point to just one email (of nearly 2,500 produced) authored by Plaintiff that could relate to Panzner.  Opp. 3.  That email contained Plaintiff's offer to share with Nitto's CEO "some ideas regarding our future organization," to which the CEO responded, "I do not want [your] ideas and opinions." *Id.*  Plaintiff also alleges that he, like Panzner, was subjected to race/ethnicity discrimination.  Pl. Cert. ¶ 9.

Similarly, Nitto argues that the Firm's "representation of Plaintiff risks a knowing or inadvertent breach of the duty of confidentiality owed by Plaintiff to Nitto."  Mot. 17.  Nitto argues that "for months after the Panzner Action was initiated, Plaintiff and Ms. Panzner were directly adverse to one another as *the* plaintiff and *the* defendant."  Reply 9.  But Plaintiff was not a defendant, only Nitto's employee.  Plaintiff was no more a defendant in the Panzner action than any other employee of the company with no role in Panzner's termination.

Even when, as here, "all the essential elements required for the application of collateral estoppel are found to exist, the doctrine should not be applied when it is unfair to do so." *Fama v. Yi,* 359 N.J. Super. 353, 359 (App. Div.), *certif. denied*, 178 N.J. 29 (2003).  "In all cases in which

10

collateral estoppel is sought to be invoked, the court must, in the exercise of its discretion, weigh economy against fairness." *Barker v. Brinegar,* 346 N.J. Super. 558, 566 (App. Div. 2002).

Here, equity weighs against disqualification. As Plaintiff argues, the Firm had already expended—at the time of Plaintiff's opposition to this motion, over 200 hours on Plaintiff's behalf. Opp. 22, citing D.E. 15 at 5. And Plaintiff, who has moved back to California, would have to re-establish a new working relationship with a different New Jersey firm if the Court compelled the Firm's disqualification.

But most importantly, RPC 1.7 requires disqualification upon a finding that one client is adverse to another "in the absence of appropriate client consent." *ABA Formal Opinion* 92-367; *Beilowitz v. Gen. Motors Corp.*, 226 F. Supp. 2d 565, 571 (D.N.J. 2002). Because both Panzner and Plaintiff have knowingly consented, any conflict would be waived. Pl. Cert. ¶ 11; D.E. 16-3 (Panzner Cert.) ¶ 10. To the extent that Nitto argues impropriety based on Plaintiff having been privy to privileged information, Reply 9-10, that argument is again conjectural.

IV. **CONCLUSION**

For the above reasons, Nitto's motion is **DENIED**. An appropriate order follows.

Dated: 10/31/2022

_____
Evelyn Padin, U.S.D.J.

11